IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| JESSICA GILL,<br>2212 Canary Court<br>Baltimore, Maryland  21231<br><br>    Plaintiff,<br><br>  v.<br><br>KEY BRAND THEATRICAL GROUP, INC.,<br>d/b/a BROADWAY ACROSS AMERICA<br>1619 Broadway, 9th Floor<br>New York, New York  10019<br><br>    Serve on:<br>    CSC-LAWYERS INCORPORATING<br>    SERVICE COMPANY<br>    7 St. Paul Street, Suite 1660<br>    Baltimore, Maryland  21202<br><br>        and<br><br>THE HIPPODROME FOUNDATION,<br>416 West Baltimore Street<br>Baltimore, Maryland  21201<br><br>    Serve on:<br>    OLIVE WAXTER<br>    Mezzanine<br>    One North Charles Street<br>    Baltimore, Maryland  21201<br><br>        and<br><br>THE MARYLAND STADIUM AUTHORITY,<br>333 West Camden Street, Suite 500<br>Baltimore, Maryland  21201<br><br>    Serve on:<br>    MICHAEL J. FRENZ<br>    Maryland Stadium Authority<br>    333 West Camden Street, Suite 500<br>    BALTIMORE, MD 21201 | Civil Action No. _____ |

and

Serve on:
DOUGLAS GANSLER,
Attorney General of Maryland
200 St. Paul Place
Baltimore, MD 21202

Defendants.

## COMPLAINT

Plaintiff, by and through her undersigned counsel, sues Defendants and alleges the following:

## INTRODUCTION

1. This is an action for declaratory, injunctive, and equitable relief and for compensatory damages to enforce the rights of individuals who are deaf or hard of hearing to full and equal access to performances at the Hippodrome Theater at the France-Merrick Performing Arts Center in Baltimore, Maryland ("Hippodrome Theater"), as is required under Title II and Title III of the Americans with Disabilities Act of 1990 ("ADA").

2. Despite the availability of captioning technology, captioning services, and display systems to remedy the discrimination, Defendants have failed to provide and display captioning to ensure that individuals who are deaf or hard of hearing have the same opportunities as hearing patrons to enjoy performances at the Hippodrome Theater.

## PARTIES

3. Plaintiff Jessica Gill is a resident of Baltimore City, Maryland. Ms. Gill, an individual with a severe hearing disability, enjoys live stage performances and would like to attend performances at the Hippodrome Theater, the premier venue in Baltimore for traveling Broadway performances.

2

4. Defendant Key Brand Theatrical Group, Inc. (d/b/a Broadway Across America) ("Key Brand") is the lessor, owner, or operator of the Hippodrome Theater at the France-Merrick Performing Arts Center, a historic theater venue located at 12 N. Eutaw Street, Baltimore, Maryland 21201. Defendant Key Brand is subject to Title III of the ADA and is a corporation qualified to do business in Maryland.

5. Defendant Hippodrome Foundation is a non-profit entity that was originally created to present live theater at the Morris Mechanic Theater, and is now the non-profit partner to Key Brand Theatrical Group. The Hippodrome Foundation is a private entity subject to Title III of the ADA.

6. Defendant Maryland Stadium Authority is a state entity whose powers and responsibilities, including the right to sue and be sued, are codified at Md. Code Ann., Econ. Dev't, §§10-601 et al. It receives and disburses funding for upgrading and maintaining the Hippodrome Theater through the Hippodrome Performing Arts Financing Fund pursuant to Md. Code Ann., Econ. Dev't § 10-653. It owns the building housing the Hippodrome Theater at 12 N. Eutaw Street, Baltimore, Maryland. The Maryland Stadium Authority is a public entity subject to Title II of the ADA.

## JURISDICTION

7. This Court has jurisdiction of this action pursuant to 42 U.S.C. § 12188 and 28 U.S.C. § 1331.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

9. The Hippodrome Theater is the premier venue for traveling Broadway performances and other live stage performances in Baltimore, Maryland.

10. The Hippodrome Theater originally opened in 1914 and, after being closed for the previous fourteen years, was fully renovated and reopened in 2004. It seats over 2000 people for stage performances.

11. The Maryland Stadium Authority oversaw the Hippodrome Theater's renovation and continues to provide funding for renovations and maintenance.

12. According to the Hippodrome website, part of the mission of the Hippodrome Theater is to create "an environment that belongs to all of the people of Baltimore, to revitalize the city, in action and in spirit."

13. The Hippodrome Foundation, the non-profit partner of Defendant Key Brand, was created in part to realize that vision. According to its website, its mission, "in addition to presenting Broadway in Baltimore at the Hippodrome Theatre, is to maximize community access to the France-Merrick Performing Arts Center through free outreach and education programs."

14. The Hippodrome Foundation website calls the Hippodrome Theater a "state building."

15. The Hippodrome Theater receives annual funding from the Maryland Stadium Authority through the Hippodrome Performing Arts Financing Fund. *See* Md. Code Ann., Econ. Dev't § 10-653.

16. Operated by Defendant Key Brand, the Hippodrome Theater is a place of public accommodation as defined by Title III of the ADA.

17. Ms. Gill is hard of hearing and is an "individual with a disability" as defined by the ADA.

18.     Ms. Gill relies on lip reading and a hearing aid in her left ear for face-to-face communication with other people.  Ms. Gill rarely uses the telephone to communicate with other people due to her hearing disability.  Similarly, she uses captioning when she watches television.  Ms. Gill does not use American Sign Language.

19.     Ms. Gill grew up in New York City and loves attending theatrical performances.  Because her hearing disability makes it difficult to fully understand and enjoy stage performances, without auxiliary aids she is unable to fully participate in or enjoy performances that do not provide captioning.

20.     Ms. Gill moved to Baltimore in 2010.  Since that time, she has attended captioned live plays at Center Stage Theater on Calvert Street in downtown Baltimore.

21.     Ms. Gill cannot fully experience or equally enjoy live performances without a textual representation of the actors' lines.  A live performance involves speech, song, music, gesture, and dance by multiple actors on the stage, making it impossible for Ms. Grill to understand who is talking, or to read lips.  The long distance between the stage and the seats makes lip reading even more difficult.  Finally, actors frequently face directions other than toward the audience, making lip reading impossible.

22.     In early 2014, Ms. Gill learned that the musical "Newsies" would be performed at the Hippodrome Theater in December 2014.

23.     Although she attempted to locate other theaters also showing Newsies, she could find no other theater within a reasonable driving distance that had scheduled a captioned performance of Newsies.

24.     On January 26, 2014, Ms. Gill sent an e-mail to Defendant Key Brand's customer service email address listed on its website.  She wrote: "Hello!  I just saw the new schedule and

5

I would LOVE to attend a show at the Hippodrome. However, I am hearing impaired and was wondering what accommodations you have available for that. I know Centerstage provides one captioned show a month. Do you have any sort of captioned devices? Best, Jess"

25. On January 27, 2014, Karen Restivo, Private Ticket Concierge in the Box Office Support office at the Hippodrome Theater, wrote to Ms. Gill that although the theater offered "infra-red hearing devices," and "sign interpreter performance," and "audio descriptions," it did not have a "caption performance or the devices."

26. On information and belief, Ms. Restivo is employed by Defendant Key Brand.

27. Ms. Gill replied to Ms. Restivo's email the same day, expressing extreme disappointment that there was no captioning available. She noted that "audio descriptions are not helpful for someone who relies on reading lips and does not sign." She added that "[a] lot of theaters in New York already have this capability and so does Center Stage in Baltimore." She asked what steps she could take to petition the theater to offer "more accommodations for people who love theater but are hearing impaired and do not sign."

28. Ms. Restivo replied that day that she would look into what the procedure would be to provide captioning.

29. Ms. Gill received no further communication from Ms. Restivo; therefore, so she followed up with another email on April 1, 2014 to check on the status of the request and ask if she could be helpful by performing any research on the topic.

30. Ms. Restivo replied that she had "sent another email to our technical director," and was waiting for a response.

31. Again receiving no response, Ms. Gill emailed Ms. Restivo on June 22, 2014 and asked if there were any updates. She did not receive a response from Ms. Restivo at that time.

6

32. Ms. Gill emailed Ms. Restivo again on July 17, 2014 and asked again if any progress had been made on the issue of captioning.

33. Ms. Restivo emailed Ms. Gill that she "sent another email" and additionally had asked the Director of the Theater about closed captioning when she had happened to see him that day, and he said he would look into it.

34. Later that day, Ms. Restivo emailed Ms. Gill again and said, "I just received a response from our General Manager that states they are exploring Closed Captioning, but do not offer it at this time."

35. No further information, including whether captioning would be implemented and, if so, when, has been provided to Ms. Gill since the final email from Ms. Restivo in July 2014.

36. Because of the lack of captioning, Ms. Gill will miss "Newsies" when it comes to the theater in December, and she is unable to attend any other performance at the Hippodrome Theater due to the lack of captioning.

37. Ms. Gill has no expectation that captioning will be available at any time in the future.

38. Ms. Gill would like to attend performances at the Hippodrome Theater, including Wicked, scheduled for the Hippodrome in April 2015.  She would purchase tickets if captioning were available.

39. Defendants' failure to provide captioning has caused Ms. Gill frustration and anger.

## COUNT I
### DEFENDANTS: KEY BRAND THEATRICAL GROUP, INC. AND THE HIPPODROME FOUNDATION
### (AMERICANS WITH DISABILITIES ACT, TITLE III)

40. Plaintiff hereby incorporates all facts in the preceding paragraphs.

41. Plaintiff is substantially limited in the major life activity of hearing and is, therefore, an individual with a disability pursuant to 42 U.S.C. § 12102.

42. Defendants Key Brand and The Hippodrome Foundation lease and/or operate a place of "public accommodation" as defined under Title III of the ADA. *See* 42 U.S.C. § 12181(7)(C).

43. Title III of the ADA establishes that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

44. Title III defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A).

45. Plaintiff would like to attend the Hippodrome Theater to watch live performances, and she has contacted the theater operator, Defendant Key Brand regarding the availability of captioning.

46. Plaintiff has been unable to fully and equally enjoy Defendants' services because Defendants have refused to provide auxiliary aids and services (captioning).

47. Defendants are discriminating against Plaintiff by not providing and displaying captioning for the performances shown at the Hippodrome Theater.

48. Defendants will continue to discriminate against individuals who are deaf or hard of hearing by not providing and displaying captioning unless this Court declares that Defendants' refusal to provide and display captioning violates Title III of the ADA.

### COUNT II
### DEFENDANT: MARYLAND STADIUM AUTHORITY
### (AMERICANS WITH DISABILITIES ACT, TITLE II)

49. Plaintiff incorporates all facts in the preceding paragraphs.

50. Plaintiff is substantially limited in the major life activity of hearing and is, therefore, an individual with a disability pursuant to 42 U.S.C. § 12102.

51. Plaintiff is a qualified individual with a disability pursuant to 42 U.S.C. § 12131.

52. The Hippodrome Theater is funded through the Maryland Stadium Authority and the Hippodrome Performing Arts State Financing Fund, which was created and is funded by the State of Maryland. The Maryland Stadium Authority owns the building housing the Hippodrome Theater. The Maryland Stadium Authority is a public entity pursuant to 42 U.S.C. § 12131.

53. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

54. Title II of the ADA defines qualified individual with a disability to mean "an individual with a disability, who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for receipt

of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131.

55. The Maryland Stadium Authority has failed to provide auxiliary aids and services to ensure effective communication with Plaintiff with respect to aural information during live theater performances at the Hippodrome Theater.

56. The Maryland Stadium Authority knew of the substantial likelihood that it was violating Ms. Gill's federal rights and failed to act on that likelihood.

57. Defendant's failure to provide the necessary auxiliary aids and services caused Ms. Gill frustration and anger at being denied the same opportunities that her hearing counterparts enjoy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a. Issue a declaratory judgment declaring that Defendants' actions, omissions, policies, and practices violate rights guaranteed to Plaintiffs under Titles II and III of the ADA;

b. Issue a preliminary and permanent injunction ordering the Defendants to:

   i) immediately cease their discrimination and provide individuals with disabilities full and equal access to the benefits of the programs, services, and activities of the Defendants;

   ii) provide and display captioning at performances at the Hippodrome Theater;

   iii) promulgate written policies and procedures to ensure that Defendants provide and display captioning;

c. Award damages to compensate Ms. Gill for her emotional distress due to Defendants' refusal to comply with Title II of the ADA;

     d.     Retain jurisdiction over this action until implementation of this Court's decree has been completed;

     e.     Award Plaintiffs' attorneys fees and costs of this proceeding, pursuant to 42 U.S.C. § 12205; and

     f.     Issue such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/
Joseph B. Espo, Fed. Bar No. 07490
Brooke E. Lierman, Fed. Bar No. 17879
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland  21202
T:  (410) 962-1030
F:  (410) 385-0869
jbe@browngold.com
blierman@browngold.com

/s/
Marc P. Charmatz, Fed. Bar No. 09358
Caroline Jackson, Fed. Bar No. 18545
NATIONAL ASSOCIATION OF THE DEAF LAW AND ADVOCACY CENTER
8630 Fenton Street, Suite 820
Silver Spring, Maryland  20910
T:  (301) 587-7732
F:  (301) 587-1791
marc.charmatz@nad.org
caroline.jackson@nad.org

*Attorneys for Plaintiff*

Dated:  December 1, 2014